UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| C. A. W., a minor, by her mother, Deeana M. Parson, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CAUSE NO.  1:12-cv-371-SEB-DKL ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

On behalf of her eight-year-old daughter, Deeana M. Parson applied for disability benefits under the supplemental security income program of the Social Security Act.[1] She alleged that her daughter has been disabled since she was one year old due to asthma with allergic rhinitis and conjunctivitis, and eczema. The defendant Acting Commissioner of Social Security[2] denied her application and Ms. Parson filed this Cause for judicial review of that decision. The Honorable Sarah Evans Barker, district judge, referred the issues

---

[1] Two programs of disability benefits are available under the Social Security Act: disability insurance benefits ("DIB") for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423, *et seq.*, and supplemental security income benefits ("SSI") for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381, *et seq.* A minor is eligible for disability benefits under only the SSI program.

[2] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, while this Cause was pending. See http://ssa-custhelp.ssa.gov/app/answers/detail/a_id/1/~/commissioner-of-social-security. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Colvin is substituted for the former Commissioner, Michael J. Astrue.

presented in this Cause to this magistrate judge for a report and recommendation as to their disposition, under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). *Order Referring Issues to Magistrate Judge* [dkt. 30]. This report and recommendation fulfills that referral.

## Standards of review and disability

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal

conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

A child under the age of eighteen is eligible for SSI benefits if she has a medically determinable mental or physical impairment that causes marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). A physical or mental impairment is one that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* § 1382c(a)(3)(D). In determining whether impairments are disabling, the combined effect of all a child's impairments must be considered, without regard to whether any single impairment alone is of disabling severity. 42 U.S.C. § 1382c(a)(3)(G).

By regulation, the Social Security Administration ("SSA") has determined that satisfaction of one of the Listings of Impairments for minors, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, fulfills the statutory requirement that a child's impairment or combination of impairments "results in marked and severe functional limitations." The Listing of Impairments, Part B, is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has pre-determined are disabling in children. 20 C.F.R. § 416.925. In general, each listed condition is defined by two sets of criteria: first, diagnostic findings that substantiate the existence of a listed condition and, second, sets of related functional limitations that substantiate the condition's disabling severity. *Id.* A

3

child's impairment or group of impairments can satisfy a listed condition in three ways: by meeting all of the listed criteria for the condition, 20 C.F.R. § 416.925(c)(3); by medically equaling the criteria, *id.* § 416.925(c)(5); or by functionally equaling the criteria, *id.* § 416.926a(a).

A child's impairment *meets* a listed condition only when it satisfies all of the criteria of the listing. 20 C.F.R. § 416.925(c)(3) and (d). A child's impairment *medically equals* a listed condition when it is at least equal in severity and duration to the criteria of a listed condition. *Id.* § 416.926(a). Medical equivalence will be found in one of three ways: (1) the child's impairment, though listed, is lacking one or more of the medical or severity criteria, but other findings related to the impairment are of at least equal medical significance to the listed criteria, *id.* § 416.926(b)(1); (2) the child's impairment is not a listed condition but the impairment's medical and severity findings are of at least equal medical significance to a closely analogous listed condition, *id.* § 416.926(b)(2); or (3) the child has a combination of impairments, no one of which equals a listed condition, but the combined impairments' medical and severity findings are of at least equal medical significance to a listed condition, *id.* § 416.926(b)(3).

A child's impairment or combination of impairments will *functionally equal* a listed condition when it is of listing-level severity, which the SSA has defined to mean that the child's impairments result in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of

functioning are (1) acquiring and using information, (2) attending to and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for self, and (6) health and physical well-being, *id.* § 416.926a(b)(1). The SSA has defined constituent activities within each domain and their normal levels of performance at different age groups. *Id.* § 416.926a(g)-(l). In general, a "marked" limitation exists when a child's impairment or combination of impairments "interferes seriously with [her] ability to independently initiate, sustain, or complete activities" within a particular domain. It is a limitation that is "more than moderate" but "less than extreme," and is the level of functioning that is expected with scores that are more than two, but less than three, standard deviations below the mean on standardized tests. *Id.* § 416.926a(e)(2). An "extreme" limitation is one that interferes "very seriously" with a child's ability to perform activities within a domain. It is "more than marked," and is the level of functioning that is expected with scores at least three standard deviations below the mean on standardized testing. *Id.* § 416.926a(e)(3).

The SSA has prescribed a three-step sequential process for evaluating child-disability claims. 20 C.F.R. § 416.924. If disability eligibility can be determined at any step in the sequence, an application will not be reviewed further. *Id.* § 416.924(a). At the first step, if the child is engaged in substantial gainful activity, *i.e.*, is earning money, then she is not disabled. *Id.* § 417.924(b). At the second step, if the child's impairments, or combination of impairments, are not severe, then she is not disabled. A severe impairment

or combination of impairments is one that causes "more than minimal functional limitations." *Id.* § 416.924(c). Third, the child's impairments, either singly or in combination, must satisfy the criteria of at least one of the conditions included in Part B of the Listings of Impairments. *Id.* § 416.924(d). The applicant bears the burden of proof at each step of the process. If a child's impairments pass all three steps, and satisfies the duration requirement, then she is determined to be disabled.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[3] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[3] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

**Procedural background**

Plaintiff's[4] application was denied on initial and reconsideration reviews. (R. 48, 50-53, 49, 57-63.) She requested and received a hearing before an ALJ, during which she was represented by present counsel. (R. 31.) Charles Block, M.D., board-certified in pediatrics, testified as a medical expert and Plaintiff's mother testified. At step one of his decision, the ALJ found that Plaintiff was not engaged in substantial gainful activity. At step two, he found that Plaintiff had the severe impairment of asthma with allergic rhinitis[5] and conjunctivitis.[6] The ALJ rejected eczema as a severe impairment and review is not sought of this finding. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet, medically equal, or functionally equal one of the listed impairments for minors. He examined Listing 103.03, asthma, and it is the only listing for which Plaintiffs contends here. Regarding the functional-equivalence domains, the ALJ found that Plaintiff has "no" limitations in the domains of attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for oneself. He found that Plaintiff has "less than marked" limitations in the domains of acquiring and using information, and health and physical well-being. Without two "marked" or one "extreme" limitation, Plaintiff's impairments could not be

---

[4] Hereinafter, unless context indicated otherwise, "Plaintiff" refers collectively to the child, acting through her mother, Ms. Parson.

[5] Allergic rhinitis is inflammation of the nasal airways caused by pollen.

[6] Conjunctivitis is inflammation of the conjunctiva (the continuous thin membrane covering the white part of the eye and the inner surface of the eyelid) caused by infection or allergic reaction. Also called "pink eye."

found to be functionally equivalent to the listing. Having failed to satisfy step three, the Plaintiff was found to be not disabled and the ALJ denied her application for benefits. When the SSA's Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner on Plaintiff's application and the one that the Court now reviews.

## Discussion

Plaintiff challenges three of the ALJ's findings: first, that she does not meet the criteria for listing 103.03C2; second, that her impairments do not result in limitations that functionally equal listing 103.03C2;[7] and, third, that Ms. Parson was not entirely credible in her testimony.

**Meeting the listing.** Plaintiff argues that substantial evidence does not support the ALJ's finding that she does not meet the criteria of listing 103.03C2, which are:

> 103.03 *Asthma*. With:
> \*   \*   \*
> C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
> \*   \*   \*
> 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period . . . .

In his decision, the ALJ first noted that no treating or examining physician indicated that the evidence satisfies the severity criteria of any listing, including 103.03C2. (R. 14.)

---

[7] Although Plaintiff's brief states that the ALJ's finding on medical equivalence also was erroneous, she did not present any argument to that effect.

Neither had the state-agency reviewing physicians. The ALJ found that the evidence of record failed to establish either the persistent low-grade wheezing between acute attacks or the absence of extended symptom-free periods that are required under the listing.

While there was a dispute at the hearing between Plaintiff's counsel and Dr. Block, the medical expert, about whether the Flovent that Plaintiff used *via* an inhaler is a corticosteroid or a non-cortico steroid and, even if it is, whether inhalation or oral administration of corticosteroids is required by the rule (Dr. Block believed that oral therapy is what is intended by the listing while Plaintiff's counsel focused on the strict language of the listing) (R. 36-39), the ALJ elided that dispute in his decision by finding that, even if Flovent is a corticosteroid (which it appears to be) and inhalant use of corticosteroids qualifies under 103.03C2. (less certain), **(1)** there is no documentation in the record that Plaintiff took Flovent for the required five days per month for three months in a year; **(2)** Plaintiff's physicians prescribed Flovent on an "as needed" basis, not for daily use; and **(3)** as noted above, the record did not show that Plaintiff experienced persistent low-grade wheezing between acute attacks or the absence of extended symptom-free periods.

The ALJ found that Plaintiff had not shown the required persistence of wheezing and that, in fact, record evidence shows that Plaintiff was not found to be wheezing during a vast majority of her hospital visits. Plaintiff argues that the ALJ ignored the evidence showing that "[s]he had *wheezing* for over 7 years between acute attacks, as noted in her

9

primary care office treatment records," (*Plaintiff's Brief* [dkt. 20] at 11), and that "she plainly had persistent wheezing between attacks" which was "documented repeatedly by her clinic and the emergency room upon physical examination," (*id.* at 13). However, the twelve records that Plaintiffs cites as evidence of wheezing, (*id.* at 11), and the five instances of acute attacks, (*id.* at 12), fail to establish *persistent* wheezing between acute attacks.

| Wheezing | Attacks |
|---|---|
| Sept. 24, 2003 | |
| Oct. 13, 2003 | |
| Aug. 2, 2004 | |
| Sept. 30, 2004 | |
| Oct. 1, 2004 | Oct. 1, 2004 |
| July 6, 2006 | |
| Nov. 21, 2007 | |
| June 1, 2009 | |
| | Sept. 29, 2009 |
| Oct. 2, 2009 | |
| | Oct. 8, 2009 |
| | March 30, 2010 |
| April 9, 2010 | |
| Feb. 16, 2011 | |
| Apr. 29, 2011 | Apr. 29, 2011 |

As the Commissioner points out, (*Defendant's Brief* [dkt. 24] at 12-13), six of the records of wheezing consist only of Plaintiff's or her mother's reports of wheezing during clinic or

10

hospital visits but medical staff did not observe any wheezing. The September 2004 record is only a record of Plaintiff's mother's report of her daughter's wheezing over the telephone, with no observation by medical personnel. At Plaintiff's October 1, 2004 visit to an emergency room, the physician noted a diffuse wheeze but that Plaintiff was in no apparent distress and, later that day, he noted no wheezing. (R. 216-18.) During a clinic visit later that month, no wheezing was observed. (R. 220.) The remaining medical observations of wheezing — July 2006, October 2009, April 2010, and February 2011 — are too intermittent and infrequent to show *persistent* wheezing. This evidence, coupled with the absence of expert medical opinion supporting listing-level severity, demonstrates that substantial evidence supports the ALJ's finding that Plaintiff did not have persistent low-grade wheezing between acute attacks that is required by Listing 103.03C.

Plaintiff also challenges the ALJ's finding that she failed to show the absence of extended symptom-free periods requiring daytime and nighttime use of sympathomimetic bronchodilators. (R. 14-15). She argues that the record shows that "she was continuously prescribed Albuterol [a sympathomimetic bronchodilator] and was given this at home and at school, during the day and during the night . . . ." (*Plaintiff's Brief* at 12.) But in most of her ten citations to the medical evidence, the only mention of Albuterol is its inclusion in the lists of her current medications at the time, with the entries showing that it was prescribed on only an "as needed" basis, not for regular daytime and nighttime use. Some of the cited records provide additional information. A November 2007 clinic note records

11

that Plaintiff is using Albuterol two times a week "this time of year" and is taking Claritin as well. "Triggers" are noted to be exercise and weather changes. (R. 271.) The "Plan" section of a June 2009 clinic note includes the instruction "Use Albuterol before playing outside. Will use an inhaler instead of a nebulizer." (R. 303.) During an April 2010 clinic visit, Plaintiff's mother reported that Plaintiff always has trouble in the Spring and Fall; that she had been using Flovent daily at that time; but that, for the past three weeks, she'd been giving Plaintiff Albuterol daily. (R. 426.) The last Record page that Plaintiff cites contains records of two encounters of Plaintiff's mother with her clinic. The first record is of a telephone call Plaintiff's mother made in September 2003, when Plaintiff was two years old and experiencing an episode of exacerbation of her asthma while also suffering a cold, cough, and congestion. Plaintiff's mother reported that, at that time, she was using Albuterol by nebulizer every four hours, usually as needed. (R. 206.) The other record is of a clinic visit the next month, in October 2003, during another exacerbation of Plaintiff's asthma while suffering other illnesses at the same time. At this visit, Plaintiff's mother reported that she had "[t]ried Albuterol and Flovent overnight, without improvement." (R. 206).

These records fail to prove or even indicate that Plaintiff had an absence of extended symptom-free periods and they fail to prove or even indicate that Plaintiff regularly and continually required regular and continual daytime and nighttime use of bronchodilators. Plaintiff's counsel also did not attempt such a showing or indication in his pre-hearing

12

memorandum or at the hearing. The ALJ found that "claimant's representative fails to support paragraph (c) of this listing, which require [*sic*] persistent low-grade wheezing between attacks or absence of symptom free periods." (R. 14.) Substantial evidence in the Record supports this finding.

**Functional equivalence to the listing.** Plaintiff next challenges the ALJ's finding that she did not functionally equal listing 103.03C2. She targets only the ALJ's findings regarding two of the six domains: moving about and manipulating objects, and health and physical well-being. The ALJ found that Plaintiff had "no" limitation in moving about and manipulating objects. He found that Plaintiff's mother's testimony about difficulties Plaintiff has walking, running, riding a bike, and other activities was irrelevant to this domain because Plaintiff's mother "testified that [Plaintiff] has problems with exertional activities because of her breathing troubles, not due to difficulties with motor skills or coordination." (R. 22.) Plaintiff argues that the ALJ's failure to consider the effects of her asthma and shortness of breach on exertion in this domain violates Social Security Ruling ("S.S.R.") 09-6p but she simply misreads the Ruling. The quote on which she relies, although it appears in the Ruling, describes the factors that are considered under the health and physical well-being domain. The purpose of the discussion in which the quote appears is to distinguish the limitations analyzed under each domain and the point that is made is that "physical effects, such as pain, weakness, dizziness, nausea, reduced stamina, or recurrent illness" are addressed under the domain of "health and physical well-being"

13

although one impairment or combination of impairments might have effects in both domains. Only limitations in fine and gross motor functioning are analyzed in the domain of "moving about and manipulating objects." The ALJ did not err.

The ALJ found that Plaintiff has "less than marked" limitations in the domain of health and physical well-being. He noted that Dr. Block, the medical expert at the hearing, after reviewing all of the evidence of record and being familiar with the SSA's six-domain criteria for evaluating functional equivalence, opined that Plaintiff was less-than-marked in this domain, as did the state-agency consultants. He also noted that all of Plaintiff's reliable pulmonary-function tests were normal. The ALJ also noted the contrary evidence of a teacher's report that Plaintiff frequently missed school due to her illness and Plaintiff's mother testimony that Plaintiff has had multiple emergency-room visits and that her symptoms are worse in Spring and Fall, during the change in the seasons. (R. 23.)

Plaintiff argues that the ALJ's finding is not supported by substantial evidence because (1) Plaintiff's teacher reported that she frequently missed school; (2) the ALJ relied on the state-agency medical consultants' rationale that Plaintiff did not have prolonged hospitalizations or recent emergency-room visits when neither are required or relevant; and (3) the ALJ's findings violate S.S.R. 09-8p which allows consideration of episodic disorders, such as asthma, which exhibit periods of exacerbation and remission.

Unfortunately, the ALJ did not specifically evaluate the teacher's report about school

absences due to Plaintiff's asthma.  He also did not mention Plaintiff's mother's contradictory hearing testimony that Plaintiff has missed school "a couple of times" and "not too often. " (R. 43).  While it would have been better for the ALJ to have addressed the teacher's report, it is only one item of evidence which does not render unreasonable the ALJ's reliance on the other items of evidence he cites, especially the medical opinion evidence.  In addition, it would be difficult to accord Plaintiff's mother's testimony on this fact less weight than the non-testimonial report by one of Plaintiff's teachers.

Plaintiff's mother argues that the ALJ's reliance on the medical consultants' citations of the lack of prolonged hospitalizations or recent emergency-room visits was erroneous because "[i]npatient hospitalizations are not, however, required to show a person meets the requirement for Listing 103.03C2 and should have no relevance to this domain."  She also points out that, contrary to the consultants' opinions, Plaintiff did have a recent emergency-room treatment in March 2010.  (*Plaintiff's Brief* at 16.)  The Plaintiff is correct that prolonged hospitalizations is not a criteria under Listing 103.03, but the issue in the present analysis is not whether the criteria of the listing are *met* but whether Plaintiff's limitations *functionally equal* the severity of the listing.  There is no indication that the ALJ considered prolonged hospitalizations to be a requirement for functional equivalence. The only justified reading of the ALJ's decision is that he relied on the medical consultants' opinions that Plaintiff's limitations were less than marked in this domain and he noted some of the bases for their opinions, one being the lack of prolonged hospitalizations.

15

Plaintiff has not shown how consideration of prolonged hospitalizations is improper under this domain. Plaintiff also failed to show how the consultants' failure to note one emergency-room visit in 2010 rendered their opinions unreliable. Finally, Plaintiff's argument that the ALJ's finding is contrary to S.S.R. 09-8p is only conclusory. She only described aspects of the Ruling, without explaining how the ALJ's finding contradicts them. The Court will not make the argument for her. The ALJ relied on the expert medical opinions of Dr. Block and the medical consultants and on Plaintiff's normal pulmonary-function tests. Because Plaintiff has not shown that these opinions, tests, or the ALJ's rationale are erroneous, substantial evidence supports the ALJ's finding that Plaintiff's has less than marked limitations in the domain of health and physical well-being.

**Credibility determination.** Finally, Plaintiff states that the ALJ's credibility determination is erroneous because he "failed to make accurate findings" regarding the seven credibility factors of S.S.R. 96-7p; it is "contrary to the evidence and contrary to SSR 96-7p;" it is perfunctory and intentionally vague; and he refused to disclose his reasoning. (*Plaintiff's Brief* at 18-19.) It is Plaintiff's argument, or, rather, statement, that is perfunctory and conclusory for it has no factual or legal development to support it. Because Plaintiffs has failed to disclose her argument or the grounds therefore, any argument is forfeited. The Court observes that Plaintiff apparently ignored the ALJ's articulation of his credibility rationale that appears from R. 16 to 18.

16

## Conclusion

For the reasons explained above, this magistrate judge recommends that the Commissioner's decision to deny Plaintiff's application for disability benefits be **AFFIRMED**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses. No replies will be allowed.**

**DONE this date:** 08/12/2013

_Denise LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-registered e-mail.